# M. F. SCOTT AND NETTIE L. SCOTT *v.* H. HACKFELD & COMPANY, LTD.

### APPEALS FROM CIRCUIT JUDGE, THIRD CIRCUIT.

#### SUBMITTED OCTOBER 16, 1905.    DECIDED OCTOBER 18, 1905.

#### FREAR, C.J., HARTWELL AND WILDER, JJ.

CANCELATION—*mistake—degree of proof.*

> A clear case should be made out in order to justify the cancelation of a note and mortgage· made in pursuance of part of an oral contract, on the ground of mutual misunderstanding or mistake as to another alleged part of the contract which was not intended to be put in writing. A mere preponderance of evidence is insufficient.

#### OPINION OF THE COURT BY FREAR, C.J.

On October 1, 1902, the plaintiff M. F. Scott, being indebted to the defendant in the aggregate sum·of $1908.27, on two book accounts, as collateral to one of which the defendant held two due bills, executed at the request of the defendant a note for that amount and a mortgage of certain lands to secure it. His wife, the other plaintiff, joined in the note and mortgage. Part of the mortgaged property belonged to her. On September 19, 1904, this bill was brought for the annulment of the mortgage and incidentally to enjoin a foreclosure which the defendant was instituting under the power of sale contained in the mortgage. The defendant filed an answer and also a cross-bill asking for an accounting and a decree requiring the plaintiffs to pay the amount found due and in default of payment that the mortgaged premises be sold and the proceeds applied, etc. The circuit judge, after a hearing, decreed that the note and mort-

gage were void and enjoined the defendant from enforcing them and, in order to settle the whole controversy having once acquired jurisdiction, found the amount then due from the plaintiff M. F. Scott to the defendant and entered judgment therefor as well as for one half the expenses of the mortgage, costs of advertising and costs of court, amounting in all to $939.41. Plaintiffs and defendant both appeal.

The theory of the plaintiffs is that the note and mortgage were given on condition that the due bills should thereupon be assigned back to the plaintiff M. F. Scott, and that the note and mortgage should now be annulled because that part of the consideration was not performed by the defendant. The plaintiffs do not seek to enforce such performance or to have the note and mortgage reformed so as to make them accord with the contract. as they claim to have understood it, nor, indeed, is it disputed that the note and mortgage were drawn and executed precisely as intended by both parties at the time. The specific prayer of the bill is that the mortgage be declared null and void for want of consideration. The circuit judge, however, did not sustain that theory, and in that he was quite right as we think, but, perhaps under the general prayer for further and other relief, decreed an annulment on the ground of mistake—finding that the plaintiffs understood that the due bills were to be assigned back upon the execution of the note and mortgage but that the defendant understood the contrary, in other words, that the minds of the parties never met in respect to a portion of the antecedent oral contract which was not intended to be executed in writing. The plaintiffs state in their brief that they do not accept the court's theory of a misunderstanding, although they state also that that theory is sufficient to establish the voidability of the note and mortgage.

The defendant contends that there was not sufficient proof of want of mutuality in the understanding of the parties to justify a decree of annulment of the written note and mortgage and cites authorities for the purpose of showing that proof in cases

of this kind should be clear and convincing and that a mere pre-ponderance of evidence is insufficient. No doubt a very strong showing should be made in order to justify a reformation of a contract on the ground of mistake in its execution, that is, on the ground that it does not express the contract that was made, or even to justify a cancelation of a written instrument on the ground that there was no meeting of the minds in the supposed antecedent oral contract, or in order to justify a cancelation of a written portion of a supposed contract, or an instrument made in pursuance of a portion of a supposed oral contract, on the ground that the minds of the parties did not meet as to another portion of the contract which was not intended to be reduced to writing. See 2 Pom. Eq. Jur. 3d Ed., Sec. 859; 6 Cyc. 336; *Maxwell Land-grant Case,* 121 U. S. 325, 381; *Godfrey v. Kidwell,* 15 Haw. 351, 355. Perhaps different degrees of proof may suffice in the different cases mentioned. Some courts go to the extent of saying that proof in the first case at least, that is, in order to justify the reformation of an instrument on the ground that it does not conform to the original contract, should be beyond a reasonable doubt, but this is putting it too strongly. See 17 Cyc. 771-773. We can say, however, that a clear case should be made out in order to justify the cancelation of a note and mortgage made in pursuance of one portion of an oral con-tract, on the ground of mistake as to an alleged other portion.

The decree appealed from was based on the finding that Scott and Hime, the defendant's agent in this matter, were equally positive, the one that the reassignment of the due bills was to be part of the consideration for the execution of the note and mortgage, and the other that such was not the case; that Scott's testimony is supported by Mrs. Scott's statement that she was familiar with her husband's business and that immediately after Scott's agreement with Hime she was informed by Scott that the claims were to be returned and that if such had not been the plan she certainly would not have executed the note and mortgage; and that the appearance of these witnesses did not

indicate that any of them were falsifying; and the conclusion that the most natural explanation of all the circumstances is that there was a mutual misunderstanding between Scott and Hime. We hardly think this a sufficient showing for setting aside the note and mortgage, especially in view of other circumstances to which reference will be made. Hime knew nothing of Scott's statement to Mrs. Scott, and Scott's testimony as well as Hime's, is that of an interested party. This testimony was given more than two years after the transaction. Although it is stated in the summary of the evidence that Scott demanded the return of the due bills without unnecessary delay, the defendant refused to give them up and continued to collect payments upon the same and apply them to the book accounts, apparently with Scott's knowledge. It may be stated here that the plaintiffs contend not only that the due bills were to be reassigned, but also that the book accounts were to be canceled, while the defendant claims that the note and mortgage were to be simply further security for the book accounts. On December 22, 1903, Scott made a written offer of settlement of the note and mortgage in which he also states that before he would do so the consideration for which the note and mortgage were given should be rendered, namely, the discharge of the book accounts and "also the surrender of other securities furnished you," describing the due bills, and that payments made upon the due bills since the execution of the note and mortgage should be applied to the note and mortgage and that any amount as yet unpaid on the due bills should be credited on the note and mortgage and the defendant retain the due bills, and also that any other payments or accounts should be credited on the note and mortgage. Certain other credits had been allowed including one cash payment of $120, made August 27, 1903, apparently long after the refusal to surrender the due bills. To this offer the defendant replied two days later that it would be most happy to render a discharge of the notes, book accounts and mortgage, on payment of the same, and return at the same time the securities that had been deposited with it, and enclosed a statement of the two book

accounts. Plaintiffs erroneously understood the defendant's reply to be a demand that the note should be paid in addition to the book accounts. The summary of the evidence states that since that date plaintiffs have not admitted the validity of the note and mortgage.

In view of the nature of the testimony at this late date as to what statements were made orally between Scott and Hime prior to the execution of the mortgage and Scott's subsequent conduct and statements prior to the filing of this bill, it does not seem sufficiently clear that there was a misunderstanding of the parties to justify the annulment of the note and mortgage. It may be that Scott's memory is at fault as to just what was stated at the time of the agreement and that, as some of his subsequent statements and acts tend to show, the agreement was that the book accounts should be canceled and the due bills reassigned not upon the execution but upon the payment of the note and mortgage, or that Scott's present view is merely his construction upon what was actually stated at the time of the original agreement. However that may be, he has not made out a clear case for the annulment of the note and mortgage. It is unnecessary to consider whether the doctrine of estoppel, or laches or ratification would preclude the plaintiffs from obtaining the relief desired, if they had made out a case otherwise. The other portions of the decree naturally fall with the portion relating to annulment.

The decree appealed from is reversed and the case remanded to the circuit judge for such further proceedings as may be proper.

Plaintiffs in person.

*Thompson & Clemons* and *G. F. Maydwell* for defendant.